In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1307

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEITH JONES,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 CR 419--George W. Lindberg, Judge.

Argued November 3, 1999--Decided April 19, 2000

   Before POSNER, Chief Judge, COFFEY and ROVNER,
Circuit Judges.

   COFFEY, Circuit Judge.  In October 1996, a
federal grand jury sitting in the Northern
District of Illinois returned a seven-count
indictment charging Keith Jones, a former police
officer with the Ford Heights, Illinois, Police
Department (FHPD), with narcotics violations,
extortion, and racketeering./1 Pursuant to a
written plea agreement, counts two through seven
were dismissed and Jones pled guilty to count
one, a charge of racketeering in violation of 18
U.S.C. sec. 1962(c). The trial judge accepted
Jones's negotiated plea and sentenced him to 168
months' imprisonment, three years' supervised
release, a $10,000 fine, and a $50 special
assessment. On appeal, Jones challenges the
imposition of the sentence imposed, arguing that
in determining his base offense level, the judge
made insufficient factual findings regarding the
amount of crack cocaine involved. Jones also
argues that the government should have moved for
a downward departure pursuant to U.S.S.G. sec.
5K1.1 in exchange for his alleged substantial
assistance. We affirm.

I.   BACKGROUND

   From 1989 to 1996, Jones, while employed at the
FHPD, was far from a model employee and,

apparently like a few other members of the FHPD, assisted in facilitating rather than prohibiting drug transactions in the Ford Heights area. As Jones admitted in the plea agreement, he accepted pay-offs from drug organizations, distributed narcotics, and agreed to fix court cases in the 1990's.

A.  The Drug Organizations

   From approximately 1991 until 1996, Jones solicited and received cash payments from various drug organizations in the Ford Heights area. Jones took these pay-offs in exchange for his arranging for the freedom of the drug purveyors to deal and sell large quantities of narcotics in Ford Heights without police interference. The nefarious leaders of five of these different drug organizations were: James Cross, Randolph Holmes, Kalonji "Tutu" McMillan, Tim Smith, and Bryant "Boochie" Greenwood. These malevolent organizations carved up the Ford Heights area as if it were their own private candyland, causing such deterioration in the area that, according to the government, city buses could no longer travel through parts of Ford Heights because the streets were so overrun with drug activity.

   In the plea agreement, Jones admitted to detailed accounts of his activities with respect to two of the five named drug organizations: The James Cross and the Randolph Holmes Organizations.

   1.  The James Cross Organization

   On January 6, 1996, Jones met with James Cross, one of the area's most notorious drug dealers. Prior to this time, James Cross had paid-off the defendant-Jones on a number of occasions in order that the officer would not interfere with Cross's drug activities. At a meeting held on January 6, 1996, Cross paid Jones $150 under the pretense of paying-off the officer so the Cross drug operation could continue to distribute narcotics in the Ford Heights area without police interference. Jones was unaware of the fact that, at this time, Cross was acting as an informant for the FBI.

   2.  The Randolph Holmes Organization

   From the end of 1994 through 1995, Holmes paid-off Jones on a number of occasions in order that his drug operation might continue without police interference. In addition to the general pay-offs, Jones, after one of Holmes's employees had been arrested and placed in custody, retrieved

the crack cocaine the employee had dropped into a garbage can outside the police station and, instead of inventorying the drugs, he sold the narcotics back to Holmes.

## B.  The Drug Distribution

Jones, in addition to taking pay-offs from drug organizations, personally distributed narcotics in the Ford Heights area. According to the plea agreement, he and another individual sold approximately 17.3 grams of crack cocaine in January 1995.

## C.  Attempting to Fix Criminal Cases

Also in January 1995, Jones had a number of conversations with a cooperating witness (CW). In these conversations, Jones agreed to help the CW in an upcoming court case/2 and the CW, in turn, gave him approximately $1,000. Unsatisfied with the $1,000, Jones later telephoned the CW and asked him for another $500. That same afternoon, the CW handed the defendant another $500. Apparently believing that the well would never run dry, Jones, in February 1995, contacted the CW again and asked for even more money to continue to allegedly assist the CW with the same criminal case. This time, the CW did not give the officer any additional money.

In addition to the facts described above, the plea agreement states that because Jones was responsible for at least 1.5 kilograms of crack cocaine, Jones's base offense level was 38. The plea agreement, however, also notes that Jones "disputes this calculation." Furthermore, the plea agreement also contains a provision stating that if Jones cooperates fully and truthfully with the government, it would, in return, "consider whether Jones's cooperation qualifies as 'substantial assistance' pursuant to U.S.S.G. sec. 5K1.1 and 18 U.S.C. sec. 3553(e)." The plea agreement also set forth in writing that Jones "acknowledges that the determination as to whether he has provided 'substantial assistance' rests solely with the government." (emphasis added).

Following Jones's guilty plea, the trial judge ordered the United States Probation Office to prepare a Presentence Investigation Report (PSR). The Probation Officer submitted the PSR and concluded, based on information supplied by the FBI as well as the U.S. Attorney's Office, that Jones should be held accountable for more than 1.5 kilograms of crack cocaine because each of the drug organizations described above individually distributed well in excess of 1.5 kilograms of crack cocaine during the time frame

set forth.

At Jones's sentencing hearing, the defendant asked the judge not to impose the sentence recommended in the PSR because, according to Jones, the PSR incorrectly calculated his base offense level by improperly attributing more than 1.5 kilograms of crack cocaine to him. Additionally, Jones argued that he was entitled, especially in light of his lengthy sentence and prior military and police service record, to a downward departure for his alleged substantial assistance.

The judge rejected both of Jones's arguments, concluding that the evidence in the record was more than sufficient to establish that Jones should be held accountable for at least 1.5 kilograms of crack cocaine. The court also found that the government's refusal to file a motion under section 5K1.1 for a downward departure was proper because Jones had not as yet offered any substantial assistance in any other related federal cases. The judge did note, however, that "it is understood by the Court that future assistance might be considered upon the recommendation of the Government." Jones appeals.

II.  ISSUES

On appeal, Jones argues that: 1) the district court made insufficient factual findings regarding the amount of drugs he was accountable for; and 2) the government should have made a motion for a downward departure pursuant to U.S.S.G. sec. 5K1.1 because he, in fact, "cooperated" with the authorities.

III.  ANALYSIS

A. The Amount of Drugs Attributable to Jones for Sentencing Purposes

1.  Standard of Review

We review a district court's determination of the amount of narcotics attributable to a defendant for sentencing purposes under the clear error standard. See United States v. Johnson, 200 F.3d 529, 537 (7th Cir. 2000). "'The factual findings of the district court will not be overturned unless they are clearly erroneous . . . . Thus, we will reverse the district court's conclusion as to quantity of cocaine attributable to [a] defendant[ ] only if we have a definite and firm conviction that the district court made a clear error in sentencing.'" United States v. Taylor, 72 F.3d 533, 542 (7th Cir. 1995) (quoting United States v. Mumford, 25 F.3d 461, 465 (7th Cir. 1994)). That is, clear error can occur with

respect to the amount of drugs attributed to a defendant when the calculation of the amount of drugs he is held accountable for is based on unreliable or insufficient information and, therefore, lacks an adequate evidentiary basis. See United States v. Span, 170 F.3d 798, 803 (7th Cir.), cert. denied, 120 S. Ct. 153 (1999).

As an initial matter, the government argues that Jones has waived the issue of the judge's drug calculation by failing to raise it before the trial court and that we should, therefore, review his claim only for plain error. See United States v. Robinson, 20 F.3d 270, 273 (7th Cir. 1994). We disagree.

In spite of the government's argument to the contrary, it is clear to us that Jones did raise an objection as to the amount of crack cocaine recommended in the PSR that he be held accountable for. At the outset of the sentencing hearing, the judge stated to defense counsel, "you are arguing the amount . . . , if I understand." (emphasis added). To which counsel replied, "[y]es I am, Judge." (emphasis added). Defense counsel then proceeded to argue that Jones should not be held accountable for 1.5 kilograms, but rather a much lesser amount. The government, at the court's request, proceeded to give a detailed account of why Jones should be held accountable for more than 1.5 kilograms of crack, pointing out that each of the five separate drug organizations Jones assisted distributed well in excess of 1.5 kilograms of crack cocaine. Furthermore, the plea agreement, as we noted earlier, states that Jones takes issue with basing his offense level on 1.5 kilograms of crack cocaine. Given that Jones raised the argument concerning the amount of drugs he would be held accountable for before the district court, we disagree with the government's contention that the defendant waived his right to challenge the judge's calculation as to the amount of crack cocaine he was responsible for and, therefore, we review under the clear error standard.

2. Relevant Conduct

Even though Jones has preserved the issue for review, he still faces an uphill struggle in convincing us that the court committed clear error. In attempting to do just that, Jones argues that the judge relied upon insufficient and unreliable evidence in concluding that he was responsible for at least 1.5 kilograms of crack cocaine.

Section 1B1.3(a)(1)(B) explains what can be

considered as relevant conduct when determining a defendant's base offense level. The Guideline states that relevant conduct is "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. sec. 1B1.3(a)(1)(B); see also United States v. Lezine, 166 F.3d 895, 905-06 (7th Cir. 1999). When calculating the amount of drugs a defendant is liable for, the judge may "consider a wide range of information" so long as it has a "'sufficient indicia of reliability to support its probable accuracy.'" United States v. Robinson, 164 F.3d 1068, 1070 (7th Cir.), cert. denied, 120 S. Ct. 122 (1999) (quoting United States v. Taylor, 72 F.3d 533, 543 (7th Cir. 1995)). Furthermore, "it is the sentencing judge alone who, based upon the evidence received, decides the identity and quantity of the drug distributed in an offense." United States v. Branch, 195 F.3d 928, 934 (7th Cir. 1999) (citing United States v. Edwards, 105 F.3d 1179, 1180 (7th Cir. 1997) (emphasis added).

In this case, not only did the U.S. Attorney's Office submit a letter detailing its position concerning Jones's accountability for more than 1.5 kilograms of crack cocaine, but the PSR, in relevant part, states that, "[a]ccording to the FBI, although a specific amount of cocaine could not be determined, there is evidence that the drug establishments of each of the aforementioned [drug organizations] sold over 1.5 kilograms of cocaine base" during the time period in question. (emphasis added). Additionally, the trial court also received statements from the government introduced at Jones's sentencing hearing which established the scope of the Holmes drug operation; an operation Jones admitted assisting for more than a year. The government informed the judge, without objection from defense counsel, that testimony at the trial of Jack Davis, the former FHPD police chief, established that the Holmes drug operation was a 24-hour a day operation with shifts of workers. The government further informed the judge that the drug activity in the Ford Heights area was so vast that it interfered with the free and unimpaired flow of traffic, to the extent that buses were unable to operate on the street because of the constant drug activity. According to the government's recitation of facts, again received without objection, the "Holmes drug operation sold easily in excess of 1.5 kilograms of crack cocaine each week or two, let alone in the course of a couple of years." (emphasis added).

At Jones's sentencing hearing, defense counsel acknowledged that his client was responsible for all reasonably foreseeable quantities of drugs within the scope of the criminal activity that Jones jointly undertook, but nevertheless still argued that: "I would ask the court to consider, particularly in light of my [prior] argument . . . , and this man's background, I would ask you to consider, Judge, a reduction of [the amount of drugs attributed to Jones] in the interests of justice and fairness. I think he's eligible for it. I think it's a comfortable reduction [23 grams instead of 1.5 kilograms] that even the government should be comfortable with." Here, in stating that Jones should be held accountable for less than 1.5 kilograms, Jones's counsel argued only that "I think the evidence will reflect it." (emphasis added). We have held that a "defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, . . . he must produce some evidence that 'calls the reliability or correctness of the alleged facts into question.'" United States v. Mustread, 42 F.3d 1097, 1102 (7th Cir. 1994) (quoting United States v. Isirov, 986 F.2d 183, 186 (7th Cir. 1993) (emphasis added). We are of the opinion that Jones has failed to meet his burden because he has failed to present any evidence demonstrating that the facts set forth in the PSR, the information contained in the U.S. Attorney's letter, or any of the other information presented to the sentencing court was unreliable or inaccurate. Jones's argument that "the evidence will reflect it" amounts to no more than a "bare denial" and is thus insufficient to call the reliability of the drug quantity calculation of the PSR, or any other source the judge relied upon, into question. See Mustread, 42 F.3d at 1101. Accordingly, we conclude that the judge did not commit clear error in holding Jones accountable for more than 1.5 kilograms of crack cocaine.

B. Downward Departure

1. Standard of Review

It is now well-settled that plea agreements are contracts, and that the government must therefore fulfill the promises it makes in exchange for the defendant's guilty plea. See United States v. Jimenez, 992 F.2d 131, 134 (7th Cir. 1993). More specifically, in circumstances where a defendant fulfills his part of a plea agreement, and the government fails to carry out its part of the plea agreement promising to file a section 5K1.1 motion, the court must give the defendant an opportunity to withdraw his plea of guilty and go to trial. See Lezine 166 F.3d at 901. This being said, it must always be kept in mind that the government will only be held responsible for

promises it actually made in exchange for the defendant's guilty plea. See id./3


  2.  Section 5K1.1 Motion

  Section 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation . . . of another person who has committed an offense, the court may depart from the guidelines." In this case, the government did not make a section 5K1.1 motion because, as the prosecutor explained at the sentencing hearing, "I have no authority to make a motion under 5K1.1 at this point. . . . [I]n terms of him [Jones] cooperating in anybody else's case, that hasn't happened up to this point."/4

  The plea agreement Jones signed states that "Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this agreement." (emphasis added). The plea agreement further states that:

  Defendant agrees he will fully and truthfully cooperate with the government in any matter in which he is called upon to cooperate that is related to or results from the charges in this case, or in any related matter in which the government seeks his cooperation.

  At the time of sentencing, the government will recommend a sentence within the applicable guideline range. In the event that the defendant's cooperation is completed prior to the defendant's sentencing, the government agrees to consider whether the cooperation qualifies as "substantial assistance" pursuant to Guideline sec. 5K1.1 and 18 U.S.C. sec. 3553(e). . . . [T]he defendant acknowledges that the determination as to whether he has provided "substantial assistance" rests solely with the government.

(emphasis added). Furthermore, the plea agreement states that the "defendant will not urge the Court to depart based on substantial assistance beyond a level determined appropriate by the government in the government's sole discretion." (emphasis added).

  The language of the plea agreement is clear in that the only promise made by the government is that it would, in its sole discretion, determine whether Jones's alleged cooperation amounted to substantial assistance. According to the

government, Jones's cooperation did not qualify as substantial assistance because while he acknowledged information concerning his own personal activity in the criminal conduct, he failed to assist the government in any of the other related federal cases. We note that Jones fails to point to any instance in which his cooperation or the information he supplied helped the government make cases against other persons. In fact, even Jones's counsel stated during the sentencing hearing that although Jones was "willing" to provide assistance, he "didn't have a lot of information" about other federal defendants. In fact, we are of the opinion that given the wealth of information the government had against Jones, his cooperation in his own case was no more than frosting on the cake and cannot be considered substantial assistance in any respect.

Based on the record in this case, we are convinced that the government did not violate the agreement when it determined, in its sole discretion, that although Jones did cooperate in his own case by pleading guilty, he did not provide substantial assistance meriting a section 5K1.1 downward departure because he failed to assist the government in any of the other related federal cases./5

Thus, we are not left with a "definite and firm conviction" that the district court erroneously attributed more than 1.5 kilograms of crack cocaine to Jones. Nor are we persuaded that the government violated the plea agreement when it decided not to move for a downward departure pursuant to U.S.S.G. sec. 5K1.1.

Jones's sentence is

AFFIRMED.


/1 Count One of the indictment charged Jones with racketeering in violation of 18 U.S.C. sec. 1962(c). The pattern of Jones's racketeering activity includes extortion under color of official right in violation of 18 U.S.C. sec. 1951, narcotics offenses in violation of 21 U.S.C. sec.sec. 841 & 846, and felony bribery in violation of 720 Ill. Comp. Stat. 5/33-1(d). Count Two of the indictment charged Jones with conspiracy to distribute 17.3 grams of cocaine base in violation of 21 U.S.C. sec. 841(a)(1) and 18 U.S.C. sec. 2. Count Three charged Jones with the distribution of 17.3 grams of crack cocaine in violation of 21 U.S.C. sec. 841(a)(1) and 18 U.S.C. sec. 2. Counts Four, Five, and Seven of the indictment charged Jones with extortion under color of official right in violation of 18 U.S.C.

sec. 1951. Count Six of the indictment charged Jones with aiding and abetting a narcotics conspiracy in violation of 21 U.S.C. sec. 846 and 18 U.S.C. sec. 2.

/2 The record does not reflect just how Jones would have been able to influence CW's state criminal case.

/3 The government, once again, argues that Jones has waived the 5K1.1 issue by failing to raise it before the district court. But we disagree. At the outset of the sentencing hearing, the judge clearly stated that he understood that defense counsel was "requesting a downward departure." The prosecution, after defense counsel argued that his client was entitled to a downward departure, then detailed why it chose not to make a downward departure under section 5K1.1. Given that the government and the sentencing judge both understood that the issue of a 5K1.1 departure was being argued, Jones, contrary to the government's position on appeal, has preserved this issue for review.

/4 At the sentencing hearing, the government also suggested that if Jones provided substantial assistance after his sentencing, it would then consider making a motion for reduction of sentence pursuant to Fed. R. Crim. P. 35(b): "Hopefully, it [substantial assistance] maybe will happen in the future, and the plea agreement contemplates that might happen in the future."

/5 Jones also argues that in 1996, the government orally promised to make a section 5K1.1 motion. But because Jones did not make this argument at the sentencing hearing, it is waived. See Jimenez, 992 F.2d at 134 & n.2.