In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-2209

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RICKEY J. WILLIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00 CR 202—**Rudolph T. Randa,** *Judge.*

ARGUED NOVEMBER 9, 2001—DECIDED AUGUST 12, 2002

Before MANION, KANNE and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Rickey Willis pled guilty to a charge of distributing 50 or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). He retained the right to appeal his sentence, and now challenges a two-level enhancement for possessing a firearm in connection with a drug offense, the calculation of his criminal history category and the district court's refusal to apply a reduction for acceptance of responsibility. We affirm.

## I.

Rickey Willis worked at a factory in Grafton, Wisconsin with Rex Hylton. Hylton was a crack addict and Willis

was his supplier. In the summer of 2000, Hylton approached the Grafton Police Department and offered to help the police make a case against Willis. The Grafton police put Hylton in contact with the Ozaukee County Sheriff's Department drug unit. Hylton became an informant for the Ozaukee drug unit and he participated in a series of controlled buys with Willis as the target. Between August 30, 2000 and September 22, 2000, Hylton purchased crack cocaine from Willis in five separate controlled buys. Unbeknownst to the police, Hylton participated in some "uncontrolled buys" as well, purchasing crack from Willis for personal use during this same time. Like many government informants, Hylton had a checkered past, including felony convictions for robbery and sexual assault as well as a misdemeanor conviction for retail theft. Hylton received nothing more than $55 in expenses for his efforts in the sting, and he testified against Willis at a sentencing hearing.

Hylton testified that he had purchased drugs on a weekly basis from Willis for a period of approximately one to one and a half years prior to the sting operation. Tr. at 7, 27-28. He sometimes went to Willis's home for the transactions and sometimes met Willis other places. On two occasions at Willis's home, Willis emerged from a bedroom brandishing a gun. Tr. at 19-20. Hylton told the drug unit officers about the gun before they executed a search warrant on Willis's home. Tr. at 19, 59-60, 66. Hylton also told the officers that he had discussed with Willis where Willis could hide cocaine in his house. Tr. at 20-22. Hylton and Willis discussed the ventilation system and the basement as good hiding places because Willis shared the basement with other tenants and could deny ownership of drugs found there. Tr. at 66. Although the police audiotaped conversations between Hylton and Willis during the controlled buys, Hylton testified that Willis brandished the gun and discussed hiding places during

meetings that were not part of the controlled buys. Thus, no audiotape was available to corroborate Hylton's claims about the gun and the hiding places for drugs. Hylton was unable to determine the dates of these conversations with any certainty. Tr. at 32-34.

Following the fifth controlled buy, the drug unit officers arrested Willis and searched his home. They found a gun in a box under the bed in the bedroom shared by Willis and his wife. They discovered 34.3 grams of crack cocaine in the duct work of the ventilation system in the basement. Willis was charged with five counts of distributing cocaine base, each count corresponding to one of the controlled buys. He also was charged with one count of possession with intent to distribute cocaine base for the crack recovered from the basement duct work.

Pursuant to a plea agreement, Willis pled guilty to one count of distribution. At his sentencing hearing, Willis denied that the crack found in the basement of his duplex was his. Tr. at 85. He also denied ownership of the gun and claimed not to know that it was under his bed. Tr. at 82-84. He testified that he never brandished a gun in Hylton's presence and that he never discussed hiding drugs in his home with Hylton. Tr. at 84, 89. He also denied selling cocaine to Hylton prior to the sting operation. Tr. at 81-82. Willis's wife testified that the gun was hers and that her husband did not know the gun was present in the house. Tr. at 75-76.

Ultimately, the district court credited the testimony of Hylton and the drug unit officers over that of Willis and his wife. The court enhanced Willis's sentence two levels for using a gun in a drug offense, and refused to reduce his sentence for acceptance of responsibility because Willis frivolously contested ownership of the cocaine found in the basement and falsely denied that he sold drugs to Hylton prior to the sting operation. On the

basis of information presented in the Presentence Investigation Report, the court included in Willis's criminal history calculation a municipal court conviction for retail theft from 1992. The district court sentenced Willis to 210 months' imprisonment and five years' supervised release. The court also ordered Willis to pay a $100 special assessment and $5900 in restitution to the Ozaukee County Sheriff's Department. In exchange for his guilty plea, the government dismissed the remaining charges against him. Willis retained his right to appeal his sentence.

## II.

Willis appeals his sentence in three respects. First, he maintains that the district court clearly erred in finding that he possessed a weapon that was used in the offense and in applying a two-level enhancement for that possession under USSG § 2D1.1(b)(1). Second, he argues that the district court erred in finding that he had previously been convicted of retail theft in Milwaukee Municipal Court and should not have included that conviction in calculating his criminal history category. Third, Willis contends that the trial court erred in finding that he frivolously contested relevant conduct and was not entitled to a sentence reduction for acceptance of responsibility under USSG § 3E1.1.

The Sentencing Guidelines for drug trafficking provide that "[i]f a dangerous weapon (including a firearm) was possessed, increase by **2** levels." USSG § 2D1.1(b)(1). The Application Note for that Guideline specifies that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." USSG § 2D1.1, Application Note 3. We review the district

court's determination that a defendant possessed a firearm in connection with a drug offense for clear error. *United States v. Booker*, 248 F.3d 683, 688 (7th Cir. 2001). Willis complains that the evidence supporting the district court's finding is thin. The district court relied on Hylton's testimony that Willis brandished the gun during two drug buys. The court also considered that the gun was found under Willis's bed. Willis now objects that both he and his wife testified that Willis was unaware of the gun, and that Hylton's testimony was patently incredible because Hylton is himself a criminal and his testimony is uncorroborated.

We give special deference to the district court's findings when they are based on credibility determinations. *United States v. Berthiaume*, 233 F.3d 1000, 1002 (7th Cir. 2000). A finding based on a credibility determination "can virtually never be clear error." *Id.* (quoting *United States v. Hickok*, 77 F.3d 992, 1007 (7th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996)). We have previously affirmed district court findings based on the testimony of a government informant, especially when that testimony is corroborated. *See United States v. Johnson*, 227 F.3d 807, 814 (7th Cir. 2000), *cert. denied*, 532 U.S. 1024 (2001). Here Hylton told the drug unit officers that they should look for a .380 handgun in Willis's bedroom. Hylton knew the gun was a .380 because Willis displayed it during drug transactions, and Hylton predicted it would be found in Willis's bedroom because Willis emerged from the bedroom holding the gun on two occasions. This testimony was corroborated when the police officers in fact found a .380 gun under Willis's bed. The district court was entitled to credit Hylton's testimony over that of Willis and his wife. The court did not clearly err in finding the gun was connected to the offense.

Willis next contends that the district court clearly erred in finding that he had been convicted of retail theft

in Milwaukee Municipal Court. The district court relied on the Presentence Investigation Report ("PSR") in finding that Willis was convicted of retail theft in Milwaukee on July 16, 1992. Willis objected to the PSR and denied that he was the individual convicted of retail theft as stated in the PSR. In response, the probation officer who prepared the PSR stated that Municipal Court records confirmed the date of the arrest and disposition as indicated in the PSR. The probation officer also informed the court that Willis's first name, middle initial, last name, date of birth and Wisconsin driver's license number all appeared on the municipal citation. At his sentencing hearing, Willis testified he was never convicted of retail theft. Tr. at 83. The court credited the information provided by the probation officer over Willis's contrary testimony and used the municipal conviction in calculating Willis's criminal history category. Willis contends that his denial under oath obliged the government to produce more than the bare allegations in the PSR in order to prove the truth of the conviction.

We review the district court's fact-findings for sentencing purposes for clear error. *United States v. Jones*, 209 F.3d 991, 994-95 (7th Cir. 2000). Generally, a court is entitled to rely on the PSR in ruling on factual issues in the sentencing context so long as the PSR is based upon sufficiently reliable information. *United States v. Taylor*, 72 F.3d 533, 547 (7th Cir. 1995). Moreover, a defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth; rather the defendant must produce some evidence that calls the reliability or correctness of the alleged facts into question. *Taylor*, 72 F.3d at 547 (citing *United States v. Mustread*, 42 F.3d 1097, 1101 (7th Cir. 1994)). If the defendant offers no more than a bare denial, the court is entitled to rely entirely on the PSR. *Taylor,* 72 F.3d at 547; *Jones*, 209 F.3d at 996. Here Willis did no more than deny the truth of the allegations in the

PSR. The court was thus entitled to rely entirely on the PSR in determining that the conviction was valid so long as the PSR was based upon sufficiently reliable information. The PSR was based on municipal records which the probation officer cross-referenced with Willis' full name, date of birth, and driver's license number. The PSR was therefore based on sufficiently reliable information. The court did not err in concluding that Willis's conviction for retail theft should be included in the calculation of his criminal history category.

Finally, Willis maintains that the trial court erred in refusing to grant him a reduction for acceptance of responsibility. In the plea agreement, Willis argues, the government promised to recommend a reduction for acceptance of responsibility if Willis exhibited behavior consistent with acceptance of responsibility. At the time the government made this promise, it was aware that Willis intended to dispute the amount of crack attributable to relevant conduct and also to contest whether he possessed a dangerous weapon during a drug offense. Willis contends that the government deluded Willis in the plea agreement by making an illusory promise to recommend a reduction for acceptance of responsibility when the government fully intended to argue that Willis frivolously denied ownership of the gun and the crack found in the basement duct work. The district court denied the reduction after finding that Willis falsely denied having sold drugs to Hylton before the first controlled sale and also falsely denied that the drugs found in the basement duct work were his.

The district court's acceptance of responsibility determination is a factual finding that we review for clear error. *United States v. Fiore*, 178 F.3d 917, 925 (7th Cir. 1999). Application Note 1 to Sentencing Guideline 3E1.1 clarifies that a false denial or a frivolous contest to relevant conduct is inconsistent with acceptance of responsi-

bility. *Fiore*, 178 F.3d at 925. A defendant must prove his entitlement to a reduction for acceptance of responsibility. *Taylor*, 72 F.3d at 549. Simply pleading guilty does not automatically entitle a defendant to a reduction for acceptance of responsibility. *United States v. McIntosh*, 198 F.3d 995, 999 (7th Cir. 2000). The district court was certainly entitled to credit the testimony of Hylton over that of Willis after hearing both testify. *Berthiaume*, 233 F.3d at 1004. Having found that Willis falsely denied the extent of his drug dealing, the district court did not err in denying Willis a reduction for acceptance of responsibility. Moreover, we note that the government's promise was not illusory. If the district court had believed Willis's testimony, the government would have been obliged to recommend a reduction in Willis's sentence for acceptance of responsibility. We therefore affirm the judgment of the district court.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*