In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-3852

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JULIO JOSE LEON SANCHEZ,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06 CR 88—**John C. Shabaz**, *Judge.*

---

ARGUED SEPTEMBER 25, 2007—DECIDED OCTOBER 19, 2007

---

Before EASTERBROOK, *Chief Judge*, and BAUER and
KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Julio Jose Leon Sanchez pled
guilty to distributing cocaine, 21 U.S.C. § 841(a)(1), and
possessing a firearm after having been convicted previ-
ously of a felony, 18 U.S.C. § 922(g)(1). On appeal Sanchez
challenges his 78-month sentence for those convictions,
arguing that the district court incorrectly calculated his
guidelines range. We affirm.

## I. HISTORY

Over the course of three transactions that took place
in June 2005, Sanchez sold approximately 180 grams of

cocaine to a buyer who was referred to him by a friend. Unfortunately for Sanchez, his new customer was, in fact, an undercover officer with the Madison Police Department. Law-enforcement agents arrested Sanchez upon the completion of the third drug deal and subsequently executed a search warrant of his residence; there they recovered over $4,000 in cash, a large scale covered in white residue, and a sawed-off black 12-gauge Mossberg shotgun. Shortly after his arrest a grand jury returned a six-count indictment, alleging, among other things, that Sanchez distributed cocaine, and that he possessed the shotgun after having been convicted previously of a felony—specifically, a 2004 state conviction in Illinois for possessing marijuana with the intent to deliver. Sanchez then entered into a plea agreement, in which he agreed to plead guilty to the cocaine-distribution and firearm-possession charges in return for the dismissal of the remaining four counts. The district court accepted the plea agreement, and ordered the probation officer to prepare a presentence investigation report (PSR).

In her PSR, the probation officer used the 2005 edition of the U.S. Sentencing Guidelines to determine first that Sanchez's base offense level was 20 because he committed the drug and firearms offenses while having a prior drug conviction. *See* U.S.S.G. § 2K2.1(a)(4)(A). To this she added four levels because Sanchez accepted the shotgun in exchange for cocaine, and thus possessed it "in connection with" a felony drug-trafficking offense. *See id.* § 2K2.1(b)(5). She then subtracted three levels to reflect Sanchez's acceptance of responsibility and his assistance to the government's investigation of his crimes. *See id.* § 3E1.1(a), (b). The result was a total offense level of 21. The officer then determined that Sanchez had a total of seven criminal-history points, including one point for his convictions in 2000 for bail jumping and disorderly conduct (which both stemmed from an incident during

which he assaulted his mother and threatened to kill his sister, *see id.* § 4A1.2 cmt. n.3), and another for his 2001 retail-theft conviction. Seven criminal-history points resulted in a Criminal History Category of IV, which, when combined with Sanchez's total offense level, yielded a recommended guidelines imprisonment range of 57 to 71 months.

Both parties filed objections to the probation officer's guidelines calculations, with Sanchez objecting on two grounds. First, he argued that the officer incorrectly assessed one criminal-history point for his retail-theft conviction because retail theft was a petty crime similar to the enumerated offenses excluded from criminal-history computations. *See id.* § 4A1.2(c)(1)(B). Second, Sanchez asserted that his bail-jumping and disorderly conduct convictions should have been excluded from the criminal-history calculation because those convictions did not result in a term of probation, or analogous supervision, of at least one year. *See id.* § 4A1.2(c)(1)(A); *United States v. Binford*, 108 F.3d 723, 727-28 (7th Cir. 1997). The officer disagreed with both objections, and declined to recalculate Sanchez's guidelines range. Meanwhile, the government filed an objection of its own, arguing that the probation officer failed to apply a two-level increase in Sanchez's offense level to reflect that the shotgun recovered from his house was stolen. *See* U.S.S.G. § 2K2.1(b)(4). The government attached to its objection a copy of an incident report from the Verona Police Department, which was designated case number 0412-2003; the report detailed a complaint made in April 2003 that a black 12-gauge Mossberg shotgun was stolen. The probation officer agreed with the government and accordingly increased Sanchez's previous total offense level from 21 to 23. The correction resulted in a new recommended guidelines range of 70 to 87 months' imprisonment.

Apparently unhappy that the probation officer rejected his objections to the PSR and increased his potential imprisonment range, Sanchez contacted the probation officer directly and filed a number of *pro se* objections. As relevant here, Sanchez challenged the officer's finding that he used the shotgun "in connection" with his cocaine-distribution offense, and the officer's corresponding application of § 2K2.1(b)(5). He claimed that he did not "use" the gun at all, but merely accepted it as "currency" while "operating some sort of pawn shop" for cocaine. Just as she did before, the officer rejected Sanchez's objections and declined to recalculate his guidelines range.

Sanchez appeared with counsel at his sentencing hearing, and at the outset of the hearing counsel stated that Sanchez wished to withdraw all objections that he had submitted *pro se*—including his objection to the probation officer's determination that he used the shotgun "in connection" with another felony offense. As counsel explained, Sanchez "reached a conclusion [that] he desire[d] to withdraw all the independent objections that he [had] brought independent of my objections and he wants the [c]ourt to hear that." After the district court granted Sanchez's request and ordered his *pro se* objections withdrawn, Sanchez challenged the two-offense-level increase for possessing a stolen firearm on the grounds that the increase was based solely on the police incident report, which, he argued, was unreliable hearsay because it did not list the serial number of the shotgun that was reported stolen. In response, the government presented the testimony of Detective Dawn Johnson of the Dane County Sheriff's Office. Detective Johnson recounted that she conducted an electronic query for the serial number taken from the shotgun found in Sanchez's house—K2533922—and discovered that a black 12-gauge Mossberg shotgun with that serial number was reported stolen to the Verona Police Department in April 2003. The

government also introduced into evidence a photocopy of the results of that query, which showed that the stolen Mossberg shotgun never was recovered and that the case remained open as case number 0412-2003 with the Verona Police Department.

The district court overruled the written and spoken objections to the PSR that Sanchez made through counsel. The court determined that Sanchez's bail-jumping and disorderly conduct convictions were included properly in his criminal-history calculation; specifically, the court found that the convictions resulted in Sanchez being placed on supervision for more than a year pursuant to deferred-prosecution agreements into which he had entered as part of his guilty pleas to the crimes. The court likewise stated that one criminal-history point was properly assessed for Sanchez's retail-theft conviction. As to Sanchez's total offense level, the court determined that the police incident report, Detective Johnson's testimony, and Johnson's serial-number query sufficiently established that the shotgun found in Sanchez's house was stolen, and thus the two-level increase under § 2K2.1(b)(4) was appropriate. The court further stated that the four-level increase for using the shotgun "in connection" with another felony offense was warranted because "the exchange of narcotics for the gun constitutes possession of a firearm in connection with a felony offense as contemplated in Section 2K2.1(b)(5)." The court accordingly adopted the recommended guidelines imprisonment range of 70 to 87 months. After considering the parties' arguments regarding the length of sentence to impose, the court stated that a sentence in the middle of the range was appropriate because it would "hold [the] defendant accountable for his actions and should achieve the sentencing objectives of punishment, deterrence, general, and specific, and rehabilitation." The court then sentenced Sanchez to 78 months' imprisonment.

## II. ANALYSIS

Sanchez makes three arguments challenging the district court's calculation of his guidelines imprisonment range. Specifically, he argues that the district court erred by (1) including his retail-theft, bail-jumping, and disorderly conduct convictions when calculating his criminal-history category; (2) increasing his total offense level by two on the basis that the shotgun recovered from his house was stolen; and (3) increasing his total offense level by four because he used the shotgun "in connection" with another felony. We address each of Sanchez's arguments in turn, reviewing the district court's application of the sentencing guidelines *de novo*, *United States v. Lock*, 466 F.3d 594, 597 (7th Cir. 2006), and the court's factual findings for clear error, *United States v. Warren*, 454 F.3d 752, 762 (7th Cir. 2006).

### A. *The District Court's Calculation of Sanchez's Criminal History Category*

Sanchez first asserts that the district court incorrectly calculated his criminal-history category by counting his retail-theft, bail-jumping, and disorderly conduct convictions, when those convictions should have been excluded pursuant to § 4A1.2(c)(1). As pertinent here, under § 4A1.2(c)(1) convictions for "misdemeanor and petty offenses" are excluded when computing a defendant's criminal-history category if (1) the offense in question is "similar to" one of several enumerated minor crimes, *see* U.S.S.G. § 4A1.2(c)(1); or (2) the convictions resulted in a sentence of one year or less of probation or analogous supervision, *see id.*; *United States v. Jones*, 448 F.3d 958, 960 (7th Cir. 2006) ("[C]ourt supervision is the functional equivalent of probation."); *Binford*, 108 F.3d at 727-28 (stating that under § 4A1.2(c)(1) "supervision is the functional equivalent of conditional discharge, which we

previously have held to be the functional equivalent of probation"). Seizing on these provisions, Sanchez argues that his retail-theft conviction should have been excluded because it was similar to the enumerated crime "[i]nsufficient funds check"—an awkward label for the offense of passing a bad check. *See United States v. Harris*, 325 F.3d 865, 872 (7th Cir. 2003). He also asserts that the district court should not have assessed one criminal-history point for his bail-jumping and disorderly conduct convictions because those convictions did not result in a term of supervision of more than one year. These arguments are frivolous.

Sanchez's challenge to the inclusion of his retail-theft conviction warrants little discussion. We, along with several other circuit courts of appeals, have rejected repeatedly the contention that a retail-theft conviction should be excluded when calculating a defendant's criminal-history category on the basis that it is similar to passing a bad check, *see Harris*, 325 F.3d at 872-73; *see also United States v. Lamm*, 392 F.3d 130, 133-35 (5th Cir. 2004); *United States v. Waller*, 218 F.3d 856, 857-58 (8th Cir. 2000); *United States v. Hooks*, 65 F.3d 850, 854-56 (10th Cir. 1995), and Sanchez has offered no compelling reason why we should revisit this position.

Equally meritless is Sanchez's contention that the district court should not have considered his bail-jumping and disorderly conduct convictions. He argues that, contrary to the district court's findings, he was not subject to over a year of supervision for those convictions. Sanchez explains that when he pled guilty to those crimes he was placed on supervision pursuant to two separate deferred-prosecution agreements—one entered on March 19, 2001, and the other entered on January 14, 2002. As a result, Sanchez continues, he was not under a continuous period of supervision during this time; instead, his supervision under the March 19, 2001, agreement

was "terminated" before he entered into the January 12, 2002, agreement. He further states that the second period of supervision pursuant to the January 12, 2002, agreement ended on June 26, 2002, and thus lasted only four-and-one-half months. Therefore, Sanchez asserts, the total amount of time on supervision pursuant to both agreements was less than one year. Aware that he shoulders the burden to proffer evidence supporting this explanation, *see United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004); *United States v. Willis*, 300 F.3d 803, 807 (7th Cir. 2002); *United States v. Rivera*, 6 F.3d 431, 444 (7th Cir. 1993), Sanchez appends to his brief three documents that, he claims, show that he was supervised for less than a year: (1) the March 19, 2001, deferred-prosecution agreement; (2) the January 14, 2002, deferred-prosecution agreement; and (3) a Dane County Circuit Court order dated June 26, 2002, dismissing the bail-jumping and disorderly conduct charges for his successful completion of the deferred-prosecution program.

However, Sanchez's explanation regarding the length of his supervision omits information crucial to his argument, and the documents he provides contradict his claim that he was subject to two separate periods of supervision for a total of less than one year. Sanchez claims that the first deferred-prosecution agreement—the one entered on March 19, 2001—was "terminated," and that he accordingly was removed from supervision when the agreement ended. Yet he does not say when that agreement ended, and instead states only that "the record is devoid" of information regarding when it ended. But this is not entirely true; the terms of that agreement provide that it would end on March 1, 2002. And if the agreement did end before that date, it is Sanchez's responsibility on appeal to explain when the agreement actually ended and to provide the court order removing him from supervision. *See Salinas*, 365 F.3d at 587; *Rivera*, 6 F.3d at 444

("'[A] defendant who challenges factual allegations contained in the PSR . . . has the burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question.'" (quoting *United States v. Isirov*, 986 F.2d 183, 185 (7th Cir. 1993) (alteration in original))). Indeed, Sanchez does not even tell us for how long in total he was under supervision.

Looking, then, to the information and documents that Sanchez does provide, we conclude that he was supervised pursuant to the deferred-prosecution agreements for over one year. Under the March 19, 2001, agreement, Sanchez was supervised through March 1, 2002. And it was during that period of supervision that (for reasons unexplained) Sanchez entered into the second deferred-prosecution agreement on January 14, 2002, thus continuing his supervision under deferred prosecution until June 26, 2002. In short, the documents Sanchez provides to us show that, although he executed two separate deferred-prosecution agreements, he was under continuous supervision from March 19, 2001, through June 26, 2002—a span of 15 months. His challenge to the district court's assessment of one criminal-history point for his bail-jumping and disorderly conduct convictions therefore fails. *See* U.S.S.G. § 4A1.2(c)(1).

## B. The District Court's Two-Level Increase of Sanchez's Total Offense Level for Possessing a Stolen Firearm

Sanchez next argues that the government failed to prove by a preponderance of the evidence that the shotgun recovered from his house was stolen, *see United States v. Birk*, 453 F.3d 893, 899 (7th Cir. 2006), and that the district court accordingly erred by applying a two-level increase under § 2K2.1(b)(4). According to Sanchez, the only evidence the government submitted was the Verona Police Department incident report showing that a black

12-gauge Mossberg shotgun was reported stolen approximately two years before his arrest. That report, he asserts, was "double hearsay" that the district court should not have considered, particularly when the report was unreliable; as Sanchez points out, the report did not provide either a serial number for the shotgun that was reported stolen or a specific description of the stolen shotgun that could be matched to the shotgun found in his house.

Sanchez is correct to label the report as a form of hearsay, *see Pecoraro v. Walls*, 286 F.3d 439, 443-44 (7th Cir. 2002), but this designation alone is irrelevant to the issue of whether the district court erred by considering it. A sentencing court "may consider a wide variety of information that would be inadmissible at trial," *see United States v. Cavender*, 228 F.3d 792, 802 (7th Cir. 2000), including evidence that is hearsay, *see United States v. Davila-Rodriguez*, 468 F.3d 1012, 1014 (7th Cir. 2006); *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005). Thus, a sentencing court clearly errs by considering hearsay evidence only if the evidence was devoid of any indicia of reliability. *See Davila-Rodriguez*, 468 F.3d at 1014; *Roche*, 415 F.3d at 618; *see also Warren*, 454 F.3d at 762.

We have no quarrel with Sanchez's point that the incident report alone was not reliable evidence. After all, the report stemmed from an unrelated crime that happened two years before Sanchez's arrest. Moreover, as Sanchez points out, the report did not provide the serial number for the gun that was reported stolen, and merely provided a general description of that gun. In fact, there was no information in the report connecting the shotgun that was reported stolen to the shotgun recovered from Sanchez's house.

However, Sanchez conveniently ignores that the incident report was not the only evidence the government

introduced to show that the shotgun found in his house was stolen. The government also introduced the unrebutted testimony of Detective Johnson, who recounted that she undertook an electronic query for the serial number taken from the shotgun found in Sanchez's house, and discovered that a black 12-gauge Mossberg shotgun with the same serial number was reported stolen to the Verona Police Department. The government further introduced a photocopy of the query's results, which revealed that the shotgun that was reported stolen never was recovered, and that the case remained open with the Verona Police Department as number 0412-2003—the same case number designation on the Verona Police Department incident report. Not only did Johnson's testimony and the serial-number query establish by a preponderance of the evidence that the shotgun recovered from Sanchez's house was stolen, *see Birk*, 453 F.3d at 899, but the evidence also confirmed the reliability of the incident report by corroborating the information provided within it, *see United States v. Martinez*, 289 F.3d 1023, 1028-29 (7th Cir. 2002) (holding that reliability of hearsay evidence may be established by corroborating evidence); *United States v. Thomas*, 280 F.3d 1149, 1154 (7th Cir. 2002) (same). The district court therefore did not err, clearly or otherwise, by concluding that the shotgun recovered from Sanchez's house was stolen. *See Warren*, 454 F.3d at 762.

C.  *The District Court's Four-Level Increase of Sanchez's Total Offense Level for Using the Shotgun "In Connection" with Another Felony and the Reasonableness of His 78-Month Sentence*

Finally, Sanchez contends that the district court improperly calculated his total offense level by applying a four-level increase on the grounds that he used his firearm "in connection" with another felony offense. *See* U.S.S.G.

§ 2K2.1(b)(5). Specifically, he renews his *pro se* objection to the PSR that he did not "use" the gun as contemplated by § 2K2.1(b)(5), but instead accepted it merely "to facilitate a drug transaction." But at his sentencing hearing Sanchez directed his attorney to withdraw this objection and chose not to renew it. And because Sanchez intentionally relinquished this challenge before the district court, we need not address it on appeal. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) ("There may be sound strategic reasons why a criminal defendant will elect to pursue one sentencing argument while also choosing to forego another, and when the defendant selects as a matter of strategy, he also waives those arguments he decided not to present."); *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000) (finding sentencing challenge waived when attorney stated at hearing "'I spoke with [defendant] this morning, and he indicated to me that we . . . have no objections to the presentence report'"); *see also United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001) (finding argument waived because failure to raise it in district court was not "a mere oversight"); *United States v. Gutierrez*, 130 F.3d 330, 332 (8th Cir. 1997) (holding that defendant waived argument by making "calculated decision" not to object).

Similarly, Sanchez does not challenge his sentence under *United States v. Booker*, 543 U.S. 220 (2005), as unreasonable in light of the sentencing factors that 18 U.S.C. § 3553(a) outlines. We presume that Sanchez's 78-month sentence is reasonable because it falls within the correctly calculated guidelines range of 70 to 87 months. *See Rita v. United States*, 127 S. Ct. 2456, 2465 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Having heard no argument to the contrary, we conclude that it is. *See United States v. Dyer*, 464 F.3d 741, 744 (7th Cir. 2006); *United States v. Harper*, 463 F.3d 663, 670 (7th Cir. 2006).

### III.  CONCLUSION

We AFFIRM Sanchez's 78-month sentence.

A true Copy:

      Teste:

                  _____
*                  Clerk of the United States Court of*
*                  Appeals for the Seventh Circuit*