**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 18, 2016
Decided March 18, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-2180

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District <br> Court for the Southern District of Illinois. |
| *v.* | No. 14-40061-001 |
| AHAMAD R. ATKINS, <br> *Defendant-Appellant*. | J. Phil Gilbert, <br> *Judge*. |

**O R D E R**

Ahamad Atkins pleaded guilty to conspiracy to distribute a controlled substance, 21 U.S.C. §§ 846, 841(a)(1), and the district court sentenced him to 216 months' imprisonment. Atkins filed a notice of appeal, but his appointed lawyer has moved to withdraw on the ground that the appeal is frivolous. *See Anders v. California*, 386 U.S. 738 (1967). Atkins agrees that counsel should be discharged but proposes that we appoint substitute counsel. *See* CIR. R. 51(b). Counsel has submitted a brief that explains the nature of the case and addresses potential issues that an appeal of this kind might be expected to involve. We limit our discussion to those issues plus the additional points that Atkins, disagreeing with counsel, believes have merit. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014). For the reasons that follow, we grant counsel's motion and dismiss the appeal.

Atkins was indicted after making a number of small sales to informants totaling 9.3 grams of crack cocaine and 1.1 grams of heroin. The probation officer estimated, though, that Atkins was responsible for distributing 1.2 kilograms of heroin, 753 grams of crack cocaine, and 1 kilogram of powder cocaine, which together equate to 4,097 kilograms of marijuana. Atkins objected that the actual amounts were about 10% of these figures, and he also contested statements from several eyewitnesses who said that they had seen him with guns while selling drugs. The government called five witnesses at sentencing to substantiate the probation officer's numbers: three former customers (who were cooperating with the prosecution) and two investigators involved in the investigation.

Adam Calvert testified that he had purchased heroin from Atkins "most" days over 3 years, sometimes twice per day, in amounts of either .3 grams or 1 gram. He preferred the larger quantity because it was more economical, but he couldn't say how often he could afford to do so. Calvert estimated that his monthly heroin purchases averaged about an ounce, but he also testified that about once each month he bought half a gram of crack or powder cocaine from Atkins.

Matthew Davis testified that he had paid Atkins $50 to $500 for crack or powder cocaine at least 200 times over 4 to 5 years. Davis said that half a gram of either crack or powder cost $50. Most often he spent $100 or $200, and 75% of the time he bought crack, rather than powder. Davis also said that he'd purchased a quarter ounce of crack at least twice and .3 grams of heroin at least 20 times.

Paul Irby, who made several of the controlled buys, testified that he had purchased crack or powder cocaine from Atkins at least 300 times from 2007 to 2014. When asked how many of those purchases occurred during the three years before he became an informant, Irby again estimated 300. After testifying that he typically bought 2 grams of crack for $200, Irby had this exchange with the prosecutor:

Q:      What's the smallest amount of crack you ever bought . . . ?

A:      $50 worth, a half a gram.

Q:      How many times do you think you bought the $50 amount?

A:      At least 300 plus times.

> Q:      Okay. So, if you bought the 50, if you bought the half-gram amounts 300 times, how many times did you get—I thought you said you normally purchased two-gram amounts.
>
> A:      Yes, when I had the money I would try to get as much as I could.
>
> Q:      Okay. How many times do you think you bought the two-gram amounts?
>
> A:      At least 300.
>
> Q:      Okay. And then a dozen—approximately a dozen times of the quarter-ounce?
>
> A:      Yes.
>
> Q:      And at least eight to ten times of the half-ounce?
>
> A:      Yes.

Irby also testified that, after receiving a large settlement from a personal-injury lawsuit, he'd once purchased a kilogram of powder cocaine from Atkins for $28,000.

Deputy Sheriff Chris Kelly testified about purchases made by three other informants. One informant, he said, reported buying heroin roughly 25 times and .5 grams of crack "on a few occasions." The second informant, Kelly continued, bought .5 to 1 gram of crack weekly for a year, and the third reported that she had purchased from .6 to 1 gram of heroin daily for more than 2 years. Finally, DEA special agent Bernie Gard testified about the controlled buys from Atkins.

The district court concluded that Calvert, Davis, and Irby all were credible and then found Atkins responsible for 1,431 grams of heroin, 701.2 grams of crack, and 1,009 grams of powder, together equivalent to 4,135.8 kilograms of marijuana. That quantity yielded a base offense level of 32. The court added 2 levels for possession of a firearm, *see* U.S.S.G. § 2D1.1(b)(1), and agreed with the government that Atkins should not receive a decrease for acceptance of responsibility, *see id.* § 3E1.1, because he had frivolously contested relevant conduct. The total offense level of 34, combined with Atkins's criminal history category of III, resulted in a guidelines imprisonment range of 188 to 235 months.

Appellate counsel begins by contending that Atkins's guilty plea was knowing and voluntary, and that any challenge to the plea would be frivolous. Counsel does not say if she consulted Atkins about whether he wants his guilty plea vacated. *See United States v. Konczak*, 683 F.3d 348, 349 (7th Cir. 2012); *United States v. Knox*, 287 F.3d 667, 670–71 (7th Cir. 2002). Regardless, our review would be limited to plain error because Atkins did not move to withdraw his plea in the district court (even though the court specifically offered him an opportunity to do so). *See United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Griffin*, 521 F.3d 727, 730 (7th Cir. 2008). We agree with counsel that any argument challenging the adequacy of the plea colloquy or the voluntariness of Atkins's plea would be frivolous because the district court substantially complied with Federal Rule of Criminal Procedure 11 before accepting the plea. And contrary to Atkins's contention, his guilty plea was not undermined by his lack of access to a law library, since a defendant who is represented by counsel is not entitled to legal materials for independent research. *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010).

Counsel also considers whether Atkins could challenge the district court's application of a 2-level upward adjustment for possession of a firearm, *see* U.S.S.G. § 2D1.1(b)(1), or the court's denial of credit for acceptance of responsibility, *see id.* § 3E1.1. As counsel correctly points out, numerous witnesses testified about the specific types of guns that Atkins possessed in their presence, and the prosecution introduced a taped conversation in which Atkins attempted to purchase a larger caliber weapon. The district court was entitled to both credit this testimony and find that Atkins's continued insistence that he had never possessed a firearm meant that he had falsely denied relevant conduct and thus wasn't entitled to a reduction for acceptance of responsibility. *See United States v. Willis*, 300 F.3d 803, 806–08 (7th Cir. 2002); *United States v. Fiore*, 178 F.3d 917, 925–26 (7th Cir. 1999).

In his Rule 51(b) response, Atkins continues to challenge the veracity of the witnesses who testified at sentencing as well as the drug quantity for which he was found responsible. Indeed, there were inconsistencies in the testimony. For example, Irby said that he'd purchased drugs from Atkins a total of 300 times, but when asked about quantities, Irby claimed to have purchased half a gram 300 times, 2 grams 300 times, a quarter-ounce a dozen times, and a half-ounce 8 to 10 times. Irby's 300 purchases thus ballooned into 620 total buys. And the quantities that Agent Gard gave for the controlled buys conflicted with those listed in the presentence report (albeit by only a few grams). As counsel correctly points out, however, the district court was entitled to believe the witnesses and rely on their estimates to determine Atkins's relevant conduct. *See United States v. Etchin*, 614 F.3d 726, 738 (7th Cir. 2010) (explaining

that appellate review is "especially deferential" where a sentencing challenge is based on a credibility determination). And even if the court had credited only the *most* conservative estimates given by each witness, the testimony still would have been sufficient to place Atkins above 3,000 kilograms of marijuana equivalent—meaning that his offense level would remain unchanged. An appeal challenging the district court's drug-quantity finding would therefore be frivolous.

Finally, Atkins tells us that he wishes to challenge counsel's performance as deficient for not giving him access to discovery before he pleaded guilty, and not adequately (in his opinion) objecting to the testimony at sentencing concerning the drug quantity. We have emphasized repeatedly that claims of ineffective assistance of counsel should be reserved for collateral review, so that a record may be developed in the district court. *See Vinyard v. United States*, 804 F.3d 1218, 1227–28 (7th Cir. 2015); *United States v. Flores*, 739 F.3d 337, 341–42 (7th Cir. 2014).

Accordingly, counsel's motion to withdraw is GRANTED, Atkins's motion for substitute counsel is DENIED, and the appeal is DISMISSED.