**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3663
_____

UNITED STATES OF AMERICA

v.

STEVEN GRAY,
                              Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:17-cr-00124-001)
District Judge: Honorable John E. Jones, III
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 20, 2019

Before: KRAUSE, MATEY, *Circuit Judges*,
and QUIÑONES ALEJANDRO,* *District Judge*

(Opinion filed:  November 8, 2019)

_____

* Honorable Nitza I. Quiñones Alejandro, District
Judge, United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

David J. Freed
Scott R. Ford
Office of the United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, Pennsylvania 17108

     *Counsel for Appellee*

Heidi R. Freese
Ronald A. Krauss
Office of the Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101

     *Counsel for Appellant*

_____

OPINION OF THE COURT
_____

QUIÑONES ALEJANDRO, *District Judge.*

Appellant Steven Gray appeals the sentence imposed by the United States District Court for the Middle District of Pennsylvania following his conviction for unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Gray challenges three sentencing enhancements that the District Court applied in calculating his sentence range under the advisory United States Sentencing Commission Guidelines ("Guidelines"). This Court has jurisdiction pursuant to

28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  For the reasons set forth below, we will affirm the District Court's judgment.

## I. BACKGROUND

Just after midnight on January 1, 2017, during the New Year's Eve fireworks festivities in York City, Pennsylvania, Police Officer Paul Thorne was patrolling residential neighborhoods in his police vehicle and, as he turned onto Silk Avenue from Mulberry Street, he heard gunshots.  He drove west on Silk Avenue and observed a person—later identified as Appellant Steven Gray—carrying a firearm.  Officer Thorne observed Gray walking down a pathway between two rowhomes located at 721 and 723 Wallace Street.  Officer Thorne stopped, exited his vehicle, and ran down the pathway with his firearm drawn, until he was about ten (10) feet behind Gray.  Officer Thorne identified himself as a police officer and ordered Gray to drop the firearm.  Gray turned towards Officer Thorne, saw that Officer Thorne was pointing a firearm at him in the "high ready" position, and began running away from the officer in the direction of Wallace Street.  App. 34, 36.  As Officer Thorne ran after him, he observed Gray toss his gun and run onto the porch of 725 Wallace Street, the residence next door to Gray's home.  Officer Thorne followed Gray onto the porch and placed Gray face down.  Within a minute or so, Police Officer Davis arrived at the scene.  Gray was handcuffed and taken into custody.

After a brief search of the area where Officer Thorne saw Gray toss the firearm—an area where Officer Davis testified that "less than three" people were outside when he arrived—Officer Thorne found the firearm on the sidewalk in

3

front of 731 Wallace Street. App. 57. The firearm had one round in the chamber and six rounds in the magazine. Officer Thorne testified that he was not worried about the firearm presenting any danger because "[i]t will not hurt anybody unless someone is squeezing the trigger." App. 39.

The firearm was identified as a Taurus 9-millimeter handgun with the serial number TLF58814D. A check with the National Criminal Information Center ("NCIC") revealed that the firearm was stolen in Manchester, New Hampshire, in 1995. After being notified that the firearm was recovered, the Manchester Police Department attempted to locate the theft victim without success. Thereafter, on January 30, 2017, the Manchester Police Department sent the following message to Officer Thorne via the National Law Enforcement Telecommunications System ("NLETS"):

> OUR DETECTIVES HAVE BEEN UNABLE TO LOCATE THE ORIGINAL VICTIM IN THIS CASE AT THIS POINT WE WILL BE REMOVING THE FIREARM FROM NCIC AND CONSIDERING THE CASE CLOSED THE FIREARM IS NOT CONSIDERED STOLEN AT THIS POINT WE APOLOGIZE FOR THE DELAY IN RESPONSE.

App. 117.

## II. PROCEDURAL HISTORY

A federal grand jury returned a one-count Indictment charging Gray with unlawful possession of a firearm by a

4

felon, in violation of 18 U.S.C. § 922(g)(1). Gray pled not guilty, and the court held a two-day jury trial. At the trial, the two primary witnesses were Officer Thorne and Gray. Pertinently, Officer Thorne testified that he observed Gray in possession of a firearm, which Gray discarded while running away from him. Gray, on the other hand, testified repeatedly that he did not have a gun. The jury found Gray guilty.

In advance of the sentencing, the United States Probation Office prepared and submitted a Presentence Investigation Report ("PSR") which, *inter alia*, calculated Gray's Total Offense Level as 30 and his Criminal History Category as IV, yielding a Guidelines range of 135 to 168 months' incarceration. However, because the statutory maximum sentence for violating § 922(g) is 120 months, the Guidelines sentence was fixed at 120 months. U.S.S.G. § 5G1.1(a).[1]

Gray filed objections to the PSR, challenging three two-level enhancements:

  (i)   possession of a stolen firearm, under U.S.S.G. § 2K2.1(b)(4);
  (ii)  recklessly creating a risk of serious bodily injury in the course of fleeing from law enforcement, under U.S.S.G. § 3C1.2; and

---

[1] This section provides "[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(a).

5

(iii) obstruction of justice for committing perjury at trial, under U.S.S.G. § 3C1.1.

By Memorandum and Order dated November 7, 2018, the District Court overruled Gray's objections. Gray argues that had the District Court sustained his objections, the Guidelines calculation would have resulted instead in a sentencing range of 77 to 96 months' incarceration. After considering the sentencing factors of 18 U.S.C. § 3553(a), the District Court granted Gray a downward variance of 36 months and sentenced him to 84 months' incarceration.

## III. ANALYSIS

When reviewing challenges to the application of sentence enhancements, this Court exercises plenary review over the District Court's legal conclusions and reviews the District Court's factual findings for clear error. *See United States v. Pawlowski*, 682 F.3d 205, 211 (3d Cir. 2012); *United States v. Richards*, 674 F.3d 215, 219-20 (3d Cir. 2012).

### A. Enhancement for Possession of a Stolen Firearm

Gray challenges the District Court's two-level enhancement of his sentence for possession of a stolen firearm. Specifically, Gray argues that the Government failed to carry its burden of demonstrating by a preponderance of the evidence that the firearm found in Gray's possession was stolen. He also argues that the doctrine of legal impossibility precluded such a finding. Gray's arguments are misplaced.

6

Section 2K2.1(b)(4) of the Guidelines provides "[i]f any firearm . . . was stolen, increase by 2 levels." To apply this enhancement, a sentencing court must find by a preponderance of the evidence that the firearm was stolen. *United States v. Fisher*, 502 F.3d 293, 307, 310 (3d Cir. 2007). The determination of whether a firearm has been stolen is a factual finding, which this Court reviews for clear error. *Id.* at 305, 308.

Here, the Government introduced an NCIC report that indicated a firearm bearing the same serial number as the firearm which Officer Thorne saw in Gray's possession was reported stolen in 1995 in Manchester. After being advised of the discovery of the firearm, the Manchester Police Department attempted to locate the original owner, without success. As a result of its inability to locate the owner of the firearm, the Manchester Police Department notified Officer Thorne that "at this point" it no longer considered the firearm stolen and would now consider the stolen firearm case closed. App. 117. This mere change in designation by the Manchester Police Department, however, did not change the fact that the gun had been reported stolen in 1995 and appeared on the NCIC list as stolen until recovered in Gray's possession more than twenty years later.

Although we have not previously addressed the issue in a precedential opinion, at least one of our sister circuits has found that the introduction of a police report regarding the theft of a firearm is sufficient to meet the Government's evidentiary burden with respect to the "stolen" status of a firearm. *See United States v. Sanchez*, 507 F.3d 532, 538-39 (7th Cir. 2007). We agree and therefore conclude that the introduction of the

reliable NCIC report was sufficient to meet the Government's burden with respect to the stolen status of the firearm. Moreover, Gray presented no evidence to rebut the NCIC report. *See United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014) (holding that burden shifts to defendant once Government has made out a *prima facie* case for a sentencing enhancement); *United States v. Diallo*, 710 F.3d 147, 151 (3d Cir. 2013) (holding the same). Because the NCIC report was a reliable authority to establish the firearm's status at the time Gray possessed it, and Gray produced no evidence to rebut it, this Court cannot conclude that the District Court committed clear error in finding that the Government had established by a preponderance of the evidence that the firearm was stolen. Thus, the two-level enhancement was appropriate.

Gray's reliance on the doctrine of legal impossibility is equally without merit. While acknowledging that this doctrine has become "disfavored,"[2] Gray argues that because the firearm found in his possession was not stolen, he could not have possessed a stolen firearm. As set forth above, the District Court's conclusion that the firearm was stolen was legally sound. As such, Gray's legal impossibility argument misses the mark.

---

[2] *See United States v. Tykarsky*, 446 F.3d 458, 468 (3d Cir. 2006) (recognizing the "disfavored" status of the doctrine of legal impossibility).

**B.      Enhancement for Creating Substantial Risk
of Serious Bodily Injury While Fleeing**

Next, Gray challenges the District Court's two-level
enhancement for creating a substantial risk of serious bodily
injury while fleeing law enforcement.  Section 3C1.2 of the
Guidelines provides:

> [i]f the defendant recklessly created a substantial
> risk of death or serious bodily injury to another
> person in the course of fleeing from a law
> enforcement officer, increase by 2 levels.

Gray argues that the Government failed to carry its
burden of demonstrating by a preponderance of the evidence
that he was fleeing law enforcement and that he recklessly
created a substantial risk of death or serious bodily injury to
another.  Gray's arguments are without merit.

Initially, Gray contends that the evidence was
insufficient to establish that he was "fleeing" law enforcement.
Specifically, Gray argues that his reaction of running away
from Officer Thorne when the officer approached him from
behind with a raised firearm was merely a reasonable
"reflexive response to move away from this approaching
danger."  Appellant's Br. at 17.  He also contends that the fact
that he only ran as far as the porch of the house next door to his
own home indicates he was not fleeing.

However, the record belies this argument.  Immediately
after Officer Thorne identified himself as a police officer, Gray
turned, ran away from the officer, and threw a loaded,

chambered firearm seventy feet down a sidewalk in a residential neighborhood. In light of these established facts, this Court cannot conclude that the District Court's finding that Gray fled law enforcement was clear error.

Next, Gray argues that there was insufficient evidence from which the District Court could conclude that he created a substantial risk of death or serious bodily injury because: (1) he tossed the firearm four or five rowhouses down the street, and (2) Officer Thorne testified that he was "not worried" about the firearm discharging after it had been thrown. App. 39. However, the record shows, and Gray does not dispute, that he threw a *loaded* firearm down a street in a residential neighborhood in the vicinity of a police officer and at least one civilian. This act alone is sufficient to create a substantial risk of serious bodily injury since the loaded firearm could have been picked up and fired by one of the people in the vicinity or discharged when thrown. Officer Thorne's testimony that he was "not worried" about the firearm discharging absent "someone[] squeezing the trigger," App. 39, does not negate the danger created by the act of throwing the loaded firearm. As such, there is no factual or legal basis on which to overturn the District Court's conclusion or application of the two-level enhancement for reckless endangerment during flight.

## C.    Enhancement for Perjury

In his final challenge, Gray argues that the District Court erred in applying a two-level enhancement for willfully obstructing justice by committing perjury during his trial. Section 3C1.1 of the Guidelines provides:

10

> [i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

It is undisputed that this enhancement is triggered where a defendant provides perjured testimony during the course of his criminal proceedings.[3] Here, the District Court expressly found that the elements for perjury were satisfied in light of the jury's verdict because Gray had repeatedly testified that he did not possess a stolen firearm. This Court reviews the District Court's factual finding of willful obstruction of justice for clear error. *United States v. Powell*, 113 F.3d 464, 467 (3d Cir. 1997).

A defendant qualifies for the perjury enhancement when he gives "false testimony concerning a material matter with the

---

[3] The commentary to this section specifically notes that the enhancement applies when a defendant is "committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction." U.S.S.G. § 3C1.1 cmt. n.4(B); *see also United States v. Dunnigan*, 507 U.S. 87, 94-95 (1993) (holding that the enhancement is triggered by a defendant's perjury during his criminal trial).

11

willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). As this Court previously held when considering a challenge to this sentencing enhancement, "a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." *United States v. Boggi*, 74 F.3d 470, 478-79 (3d Cir. 1996) (quoting *United States v. Weston*, 960 F.2d 212, 218 (1st Cir. 1992)). Though "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding, express separate findings are not required." *Id.* at 479 (internal quotation marks and citation omitted). Here, the District Court expressly found the existence of each of the three elements for the perjury enhancement.

First, the District Court correctly found that the elements of falsity and materiality were implicit in the jury's guilty verdict for possession of a firearm. Obviously, the jury could not have convicted Gray of possession of a firearm without finding that he had *in fact* possessed a firearm. Further, if the jury had believed Gray's testimony that he did not possess a firearm, the jury would not have convicted him of unlawful possession of a firearm. As such, there can be no question that the relevant findings with respect to the falsity and materiality of Gray's testimony were necessarily made by the jury. *Boggi*, 74 F.3d at 479 (concluding the defendant's trial testimony was false and "necessarily material" because the jury would not have convicted him if the jury had believed the testimony); *United States v. Fiorelli*, 133 F.3d 218, 224 (3d Cir. 1998) (affirming district court's finding that falsity was implicit in jury's verdict and, thus, sufficient to carry

12

Government's burden). Accordingly, the District Court's finding that Gray's testimony was false and material cannot be disturbed on appeal.

Moreover, based on the record, there was ample support beyond the jury's conviction for the District Court's finding that Gray provided false testimony regarding his possession of a firearm. In particular, Officer Thorne testified that he observed Gray holding a firearm. This testimony, found credible by the judge, stood in direct contrast with Gray's repeated self-serving testimony that he never possessed a firearm.

The District Court went on to expressly find that Gray's false testimony was willfully given. In support of this willfulness finding, the District Court pointed to the absence of any evidence that Gray's false testimony was due to confusion or mistake and cited three specific examples where Gray testified clearly but falsely with respect to possessing a firearm. Due to the clarity of Gray's repeated false testimony, the District Court found that Gray willfully gave false testimony. In light of the District Court's findings, all of which are amply supported by the record, this Court will not overturn the District Court's application of the sentencing enhancement.

In a final challenge to the perjury enhancement, Gray attempts to breathe life back into an argument that he, himself, acknowledges has been rejected by both the Supreme Court and this Court. Gray suggests that the perjury enhancement should not be applied to his case because such an enhancement deters a defendant from exercising his fundamental right to testify on his own behalf at trial. As correctly noted by Gray,

13

this argument has been soundly rejected, and we again reject it here. *See Dunnigan*, 507 U.S. at 96 ("Respondent cannot contend that increasing her sentence because of her perjury interferes with her right to testify, for we have held on a number of occasions that a defendant's right to testify does not include a right to commit perjury."); *Napolitan*, 762 F.3d at 312-13.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.