**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2529
_____

UNITED STATES OF AMERICA

v.

DOUGLAS TYRONE WILLIAMS, JR.,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-16-cr-00175-001)
District Judge:  Honorable Mark R. Hornak

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 10, 2023

_____

Before:  JORDAN, PHIPPS, and ROTH, *Circuit Judges*.

(Opinion filed: May 3, 2023)

_____

OPINION[*]

_____

PHIPPS, *Circuit Judge*.

Douglas Williams raises four issues in appealing his conviction and 220-month

prison sentence for several counts of violating federal drug and firearms laws.  The first

challenge, a claim of implied juror bias based on a distant kinship between a juror and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

one of the prosecutors, involved testimony from that prosecutor and his father. The second issue is a dispute over the application of a two-point enhancement for obstruction of justice, but the District Court imposed that only after debunking Williams's claim that surveillance footage showed an agent planting a gun in Williams's store. Due to the sensitive nature of those contentions – an attack on the integrity of a juror that required testimony by a family member of the prosecution team and a claim that a law enforcement officer planted evidence – neither should be brought lightly. Yet both lack merit. Williams's other two arguments on appeal – an unpreserved objection to lay opinion testimony and a sufficiency of the evidence challenge – also fail. For the reasons, elaborated below, we will affirm the judgment of the District Court.

### FACTUAL BACKGROUND

Despite his release on parole in 2013 after serving fifteen years' state imprisonment for third-degree murder,[1] Douglas Williams returned to a life of crime. He began to distribute thousands of dollars of heroin in Penn Hills – a suburb east of Pittsburgh. Once detected, his operation did not last long. In July 2016, through a controlled buy, law enforcement observed Williams offer nearly $50,000 worth of heroin to a government informant. He was arrested on the spot, with 237 grams of heroin on his person.

Law enforcement then obtained and executed search warrants for Williams's business – a Boost Mobile Store – and his pickup truck, which was parked nearby. In the store's back room, officers found 126 grams of black tar heroin, $10,000 in cash, a bag of ammunition, and three firearms: a loaded 9-millimeter pistol, a .22 caliber semi-

---

[1] *See Commonwealth v. Williams*, No. CP-02-CR-0012320-1997 (Pa. Com. Pl. Ct. 1997); *see also Commonwealth v. Williams*, 2003 WL 25712018, at *1 (Pa. Com. Pl. Ct. July 9, 2003) (denying PCRA petition), *aff'd*, 855 A.2d 138.

automatic Mossberg, and a .22 caliber American Tactical Imports rifle. They also found a loaded .45-caliber handgun under the store's front room counter. In the pickup truck, officers found $3,800 in cash and a 9-millimeter handgun loaded with hollow-point ammunition. Four of the five firearms recovered were stolen. The remaining firearm had an obliterated serial number.

The government sought and obtained an indictment charging Williams with four counts of federal drug and gun offenses, including possession of a firearm in furtherance of a drug crime. *See* 18 U.S.C. § 924(c)(1)(A)(i); *see also id.* § 3231. After trial, the jury returned a guilty verdict for every count against Williams. At sentencing, the District Court applied a two-level obstruction of justice enhancement, *see* U.S.S.G. § 3C1.1, to arrive at a term of imprisonment of 220 months followed by five years' supervised release. Williams timely appealed, bringing this matter within this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291, 18 U.S.C. § 3742(a).

## DISCUSSION

### A. Williams Has No Claim of Implied Juror Bias.

Williams challenges the validity of his conviction on the theory that one of the jurors was impliedly biased due to distant, then-unknown familial ties to the prosecutor. As "a limited doctrine, one reserved for exceptional circumstances," implied juror bias requires a "close" kinship between a juror and a principal in the trial, in this case, the prosecutor. *United States v. Mitchell*, 690 F.3d 137, 147 (3d Cir. 2012) (citing *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)).

But here, on *de novo* review, the kinship was nowhere near close. *See id.* at 149. The juror was the foster child of the niece of the great grandmother of one of the prosecutors. Neither the juror nor the prosecutor knew of that attenuated tie until after

3

the jury had returned a verdict, when the juror, by chance, spoke with the prosecutor's father at a county fair. In later testifying before the District Court, the prosecutor's father stated that the only interactions between the juror and the prosecutor occurred when the prosecutor was two or three years old. For these reasons, the District Court correctly rejected the implied bias claim as "not a close call." *United States v. Williams*, 453 F. Supp. 3d 720, 732 (W.D. Pa.), *amended* 2020 WL 1877789 (Apr. 15, 2020).

## B. The District Court Did Not Clearly Err in Finding that Williams Obstructed Justice.

The District Court imposed a two-point, obstruction-of-justice enhancement to the base offense level for Williams's sentence. That enhancement applies when two conditions are satisfied:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and
>
> (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

U.S.S.G. § 3C1.1. The District Court found that Williams met those criteria by "materially, intentionally and by necessity" sending doctored surveillance footage to the court to push the false narrative that law enforcement planted the .45-caliber handgun that he was charged for possessing in connection with a drug offense. Sentencing Tr. (App 1185:12–13).

It was not clearly erroneous to find that Williams obstructed justice. *See United States v. Gray*, 942 F.3d 627, 633 (3d Cir. 2019) (applying the clear-error standard to review the application of the obstruction-of-justice enhancement). At the pre-trial stage, Williams, without the support of counsel, directed his fiancée to mail surveillance footage taken from his store to the District Court. The surveillance footage is not a continuous

4

video but rather separate 20-second clips. In one clip, a law enforcement agent retrieves the .45-caliber handgun from under the store counter and disables it. In another, a clip with a modified file name, the same law enforcement agent places the handgun under the store counter. The video clips do not have timestamps showing which event came first: the retrieval or the placement of the gun. Along with the video, the mailing contained a letter stating that, as depicted in the footage, law enforcement planted evidence in Williams's store. One month later, Williams, again without the support of counsel, wrote the District Court to accuse a law enforcement agent of planting a gun under his store counter. But the 20-second video clips – which lack both continuity and timestamps – do not independently establish the order of events, such that planting had to have occurred before retrieval. And the agent accused of planting the .45-caliber handgun testified that he retrieved the weapon first and returned it later. The video clip depicting the retrieval of the gun shows a second officer turn and face the counter, as if reacting to the discovery of new evidence. This record does not prompt "the definite and firm conviction," *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (internal citation and quotation marks omitted); *United States v. Belletiere*, 971 F.2d 961, 969 (3d Cir. 1992), that the District Court was mistaken in concluding that Williams obstructed justice by sending the incomplete video clips to the Court with the "intention that the case, in essence, be thrown off the rails." Sentencing Tr. (App. 1184:20–21).

### C. It Was Not Plain Error to Permit a Law Enforcement Officer to Testify on the Meaning of Williams's Text Messages.

Williams next raises an evidentiary challenge that he did not preserve. At trial, a law enforcement agent testified about the meaning of Williams's text messages. For instance, the agent interpreted Williams's text, "I'm going to close all other ends to service you," to express Williams's desire for the informant to become his primary

5

customer. Agent Balchon Trial Testimony (App 443:17–44:3). On another occasion, the agent explained Williams's text message stating, "Everything on hold. New York jammed up," to mean that there was a problem with drug supply in New York. *Id.* (App 480:1–12). Williams did not object to this testimony at trial. As an unpreserved objection, the plain-error standard governs his challenge. That standard requires a "reasonable probability" that the error altered the outcome of the proceedings. *See Greer v. United States*, 141 S. Ct. 2090, 2096 (2021). And Williams does not meet that burden. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (likening this requirement of the plain error standard to a harmless error standard where the defendant has the burden of persuasion). Williams was arrested in the act of dealing drugs, and law enforcement seized heroin and five firearms belonging to him. *United States v. Diaz*, 951 F.3d 148, 158 (3d Cir. 2020) (holding that improperly admitted lay opinion testimony did not affect substantial rights due to the other "considerable evidence" of guilt). In light of that highly persuasive and independent evidence of guilt, even if the admission of the agent's opinion testimony was improper, it does not provide a basis to overturn Williams's conviction.

### D. The Evidence Was Sufficient for Williams's Conviction of Possession of a Firearm in Connection with a Drug Trafficking Offense.

Williams also contends that the record did not contain sufficient evidence to convict him for possession of a firearm in connection with a drug trafficking offense. *See* 18 U.S.C. § 924(c)(1)(A)(i). Several considerations bear on whether Williams possessed the guns seized from his business and car in connection with drug dealing:

> the type of drug activity that is being conducted, [the] accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, [the]

6

proximity to drugs or drug profits, and the time and circumstances under
which the gun is found.

*United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004) (quoting *United States v.*

*Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000)).

Based on those considerations, it was not "below the threshold of bare rationality"

for the jury to find that Williams possessed a gun in furtherance of a drug crime.

*Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam); *see also United States v.*

*Johnson*, 677 F.3d 138, 143 (3d Cir. 2012) (deferring to jury's application of the *Sparrow*

factors and affirming conviction).  He moved thousands of dollars of heroin, and he kept

five guns in his store and car.  Two of the firearms were recovered in easily accessible

places: one in his car and another under the store counter.  Four of the five firearms were

stolen, and the remaining one had a scratched out serial number.  Three firearms were

loaded.  Accordingly, Williams's challenge to the sufficiency of the evidence fails.

✻ ✻ ✻

For the foregoing reasons, we will affirm Williams's judgment of conviction and

sentence.